Max R. Tarbox (TX 19639950)
max@tarboxlaw.com
TARBOX LAW, P.C.
2301 Broadway
Lubbock, Texas 79401
Phone: 806.686.4448
Fax:  806.368.9785

Stephen A. McCartin (TX 13374700)
smccartin@gardere.com
Marcus A. Helt (TX 24052187)
mhelt@gardere.com
Barry M. Golden (TX 24002149)
bgolden@gardere.com
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas  75201-4761
Telephone:  214.999.3000
Facsimile:  214.999.4667

**COUNSEL FOR WALTER O'CHESKEY,
TRUSTEE OF THE AHF LIQUIDATING
TRUST**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **American Housing Foundation,** | § | **Case No.:  09-20232-RLJ** |
| | § | |
| **Debtor.** | § | |
| | § | |
| **Walter O'Cheskey, as Chapter 11 Trustee,** | § | **Adversary No. 10-02016-RLJ** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **Robert Templeton,** | § | |
| **Defendant.** | § | **(Consolidated with)** |
| | § | |
| **Walter O'Cheskey, as Chapter 11 Trustee,** | § | **Adversary No. 10-02017-RLJ** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **David Miller,** | § | |
| **Defendant.** | § | |

# TABLE OF CONTENTS

Page

A.   This Court should deny Defendants' motion for separate trials. .........................................3

    1.   Defendants did not even attempt to carry their burden............................................3

    2.   Bifurcating is unrealistic and expensive. ..............................................................4

B.   This Court should deny Defendants' motion for stay.........................................................5

    1.   Criterion 1:  Defendants cannot show that there is a substantial likelihood
        that the Defendants will prevail on the merits. ........................................................6

    2.   Criterion 2:  The Defendants cannot show that there is a substantial threat
        that the Defendants will suffer irreparable injury if the stay is not granted. .........10

    3.   Criterion 3:  The Defendants cannot show that the threatened injury to
        them in the absence of a stay outweighs the potential harm to the Trustee
        if the stay is granted. ...........................................................................................10

    4.   Criterion 4:  The Defendants cannot show a stay will serve the public
        interest...................................................................................................................11

C.   Conclusion and Scheduling Proposal.............................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Jackson,*
   556 F.3d 351 (5th Cir. 2009) ............................................................................5

*Carey Lumber Co. v. Bell,*
   615 F.2d 370 (5th Cir. 1980) .........................................................................7, 9

*E.E.O.C. v. S. Farm Bureau Cas. Ins. Co.,*
   271 F.3d 209 (5th Cir. 2001) ..........................................................................11

*Enterprise Int'l v. Corporacion Estatal Petrolera Ecuatoriana,*
   762 F.2d 464 (5th Cir. 1985) ............................................................................5

*Hardesty Builders, Inc. v. Mid-Continent Casualty Co.,*
   2010 WL 2787810 (S.D. Tex. July 14, 2010)....................................................3

*In re IFS Financial Corp.,*
   417 B.R. 419 (Bankr. S.D. Tex. 2009) ..............................................................8

*In re Ionosphere Clubs, Inc.,*
   262 B.R. 604 (Bankr. S.D.N.Y. 2001)...............................................................8

*In re Plaza Mortg. and Finance Corp.,*
   187 B.R. 37 (Bankr. N.D. Ga. 1995) ...............................................................13

*In re Prescription Home Health Care, Inc.,*
   316 F.3d 542 (5th Cir. 2002) ............................................................................8

*In re Statmaster Corp.,*
   465 F.2d 978 (5th Cir. 1972) ............................................................................8

*In re Tiger Petroleum Co.,*
   319 B.R. 225 (Bankr. N.D. Okla. 2004) ............................................................8

*Mohawk Indus. Inc. v. Carpenter,*
   130 S. Ct. 599 (2009)......................................................................................14

*N.L.R.B. v. Bildisco and Bildisco,*
   465 U.S. 513 (1984).......................................................................................7, 9

*Weber v. United States Trustee,*
   484 F.3d 154 (2d Cir. 2007)..............................................................................6

STATUTES

28 U.S.C. §§ 158(b)(2)(B) and 1334(b) .......................................................................8

28 U.S.C. § 158(d)(2)(A) ...............................................................................................6

28 U.S.C. § 158(d)(2)(A)(i-iiii) ......................................................................................6

OTHER AUTHORITIES

Rule 8005 .......................................................................................................................5

## TRUSTEE'S RESPONSE TO DEFENDANTS' MOTION
## FOR SEPARATE TRIAL AND STAY PENDING APPEAL

Defendants Robert Templeton and David Miller are absolutely, positively, and transparently desperate to hide their tax returns. Presumably, those materials contain information so critical to this adversary (or in some other way, so fatal to the positions they have taken before this Court) that they are intent on making frivolous filing after frivolous filing—with this Court, with the District Court, and with the Fifth Circuit—merely to stall their inevitable production. And to be certain, their production *is* inevitable. The Court has already ruled time and time again that, with regard to soft money investors, issues related to illegitimate tax deductions are both relevant and admissible.

- The Court did so in denying the Defendants' motions to dismiss.

- The Court did so a second time in denying the motion to strike the Trustee's tax expert in the *Horton* matter (where, according to Horton, who is represented by the same counsel as the Defendants, the Defendants are subsidizing the defense).

- The Court did so a third, fourth, and fifth time by denying the Defendants' motion to dismiss for lack of subject matter jurisdiction, denying Defendants' motion for protection, and granting the Trustee's motion to compel.

Yet, even after these five failed attempts at escaping their discovery obligations, and notwithstanding the Court's order pointedly compelling them to provide the Trustee with this discovery, the Defendants have unilaterally granted themselves an indefinite discovery stay. So, the Trustee, who is preparing for this trial set to commence in September, is still without any depositions or any tax-related documents.

Having failed in their previous five attempts, Defendants are now back up to the plate for with their sixth, seventh, and eighth batters (certainly not the meat of the order) in the form of

their (a) motion for leave to appeal, (b) request for certification, and (c) motion to bifurcate this adversary or, alternatively, stay this adversary—which is what this response addresses.[1]

As to the motion to bifurcate, the Defendants' completely failed to carry their burden (since they provided no supporting authorities). Plus, bifurcating would ***exponentially*** increase litigation costs. As to their alternative motion to stay the adversary, the Defendants maintain the burden to satisfy four separate criteria. They cannot, however, satisfy a single one. Here is the executive summary.

Criterion 1:   Defendants must demonstrate a substantial likelihood that they will prevail on the merits of their appeal—this is unlikely since bankruptcy courts unquestionably possess the authority to consider creditors' tax activities in determining whether to allow their claims in a bankruptcy case. Furthermore, the issues the Defendants wish to raise on appeal are neither purely legal questions nor open questions causing confusion amongst the courts, making it unlikely that the Fifth Circuit will even exercise its plenary discretion to hear the appeal.

Criterion 2:   Defendants must demonstrate that they will suffer irreparable injury if the stay is not granted—they cannot do this because, as a matter of law, providing the tax-related discovery to the Trustee under a protective order will not cause any injury whatsoever, let alone an irreparable injury.

Criterion 3:   Defendants must demonstrate that the threatened injury to them in the absence of a stay outweighs the potential harm to the Trustee if the stay is granted—they cannot do this because, (a) as stated above, there is no potential injury and therefore, there is no harm to

---

[1] Since the June 23, 2011 hearing is solely covering the motion to bifurcate and stay (the eighth batter), this response is limited to that motion. The Trustee will respond to the motion for leave to appeal (the sixth batter), and the request for certification (the seventh batter) separately.

the Defendants, but conversely (b) if the stay is granted, the Trustee will be delayed in paying legitimate creditors.

Criterion 4:    Defendants must demonstrate that a stay will serve the public interest—they cannot do this because (a) postponing discovery by filing frivolous motion after frivolous motion exploits—rather than serves—the legal system and the public interest, and (b) delaying legitimate creditor payments does not serve the public interests.

**A.    This Court should deny Defendants' motion for separate trials.**

Defendants request that the Court split up this matter. The first trial—with its own pre-trial deadlines, motions, and non-tax-related discovery—would involve non-tax evidence and would begin in September. The second trial—also with its own pre-trial deadlines, motions, and tax-related discovery—would proceed much later and separately. As described below, the Court should deny this request since the Defendants failed to carry their burden and because the proposal is unrealistic and expensive.

1.    Defendants did not even attempt to carry their burden.

Defendants are requesting separate trials. The initial question is who carries the burden on this issue. "The burden is on the party seeking separate trials to prove that separation is necessary." *Hardesty Builders, Inc. v. Mid-Continent Casualty Co.*, 2010 WL 2787810, at *3 (S.D. Tex. July 14, 2010).

Despite owning the burden fully, the Defendants' motion cites absolutely no authority supporting its request for separate trials, nor does it even indicate the basis on which Defendants' believe separate trials are warranted. This abject failure to make any argument for separate trials is sufficient reason alone to deny Defendants' request.

2.      Bifurcating is unrealistic and expensive.

Under Defendants' proposal of bifurcation, the parties would incur exponential expenses, including those of taking two depositions of each of Templeton and Miller and each of their respective fact witnesses (one deposition for each in preparation of the first trial relating to non-tax-related evidence, and a second deposition for each in preparation of the second trial relating to tax-related evidence). The parties would similarly be doubling up on filing and responding to pre-trial motions, making other pre-trial submissions, attending pre-trial hearings, and, of course, preparing for and participating in multiple trials. In short, if the Court were to bifurcate the matter, the resources required to litigate would increase substantially, if not exponentially.

But it doesn't just end there. Like dropping water on an entire pack of Gremlins, bifurcating this particularly soft-money matter because of the need for tax evidence would necessarily require bifurcation of every other adversary requiring the use of tax evidence, including those involving:

- Rice Trust & Housing for Texans;

- Mays Trusts;

- Walden II Investors (Storseth, et al.);

- Rainier & Koehler Related Parties;

- William Scott and Scott IRA;

- LIHTC No. 3 Investors (Burgess Related Parties);

- LIHTC M2M Affordable Housing Portfolio Ltd. Investors (Burgess Related Parties);

- GOZ No. 3, Ltd Investors (Burgess Related Parties);

- Herring Bank and Vaudrey Capital (Burgess Related Parties).

Simply put, granting the motion to bifurcate would create a ridiculous level of cost and burden in both this adversary and in numerous other adversaries.

**B.      This Court should deny Defendants' motion for stay.**

As an alternative to bifurcating this matter (and by extension, as an alternative to bifurcating all of the soft-money matters requiring tax evidence), the Defendants seek to stay this matter (and by extension, seek to stay all of the other soft-money matters involving tax evidence). Again, the first question is who carries the burden on this request. The answer is the Defendants, and in the fact, the burden is quite heavy.

In the Fifth Circuit, "[a] party seeking a stay pending appeal under Rule 8005 must satisfy the four criteria required for issuance of a preliminary injunction." *In re* Stewart, 2009 WL 1649731, *2 (E.D. La. June 10, 2009). Those criteria are: (1) whether there is a substantial likelihood that movant will prevail on the merits; (2) whether there is a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) whether the threatened injury to the movant outweighs the potential harm to the non-movant; and (4) granting the stay will not disserve the public interest. *Id.* (citing *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009)). The party seeking a stay must satisfy ***all four criteria*** in order to prevail. *Id.* (citing *Enterprise Int'l v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464 (5th Cir. 1985)). Here, Defendants not only cite to the incorrect legal standard in requesting a stay (they cite to the Second Circuit, since that circuit employs a lighter standard), but they also fail to satisfy any, let alone all, of the relevant criteria.

1.   Criterion 1:  Defendants cannot show that there is a substantial likelihood that the Defendants will prevail on the merits.

If there is no substantial likelihood that the Defendants will win on the merits of their appeal, then the Court must deny the motion to stay.  Here, it is unlikely that the Fifth Circuit will even consider the Defendants' appeal and thus there is no substantial likelihood that they will succeed on the merits.

The Fifth Circuit has plenary discretion to authorize or reject a direct appeal from a bankruptcy court order.  28 U.S.C. § 158(d)(2)(A); *see also Weber v. United States Trustee*, 484 F.3d 154, 160 (2d Cir. 2007) ("Congress has granted explicitly granted us plenary authority to grant or deny leave to file a direct appeal").[2]  One appellate court explained the nature of this discretion succinctly:   "[t]he focus of [Section 158(d)] is explicit: on appeals that raise controlling questions of law, concern matters of public importance, and arise under circumstances where a prompt, determinative ruling might avoid needless litigation. . . . Congress intended [Section 158(d)] to facilitate our guidance on pure questions of law." *Weber*, 484 F.3d at 158.  Based on this standard, it is unlikely that the Fifth Circuit would even permit a direct appeal because no issue raised by Defendants involves a purely legal question, and even if it did, there is no confusion among the bankruptcy courts.

---

[2] Before the Fifth Circuit could exercise its discretion, this Court would have to exercise its own discretion to certify that a direct appeal is warranted (an issue not presently before this Court).  28 U.S.C. § 158(d)(2)(A)(i-iiii). Importantly, there is nothing in the statutory language that limits a bankruptcy court's discretion to *deny* certification if it does not conclude that a direct appeal is warranted.   While the statute, through the requirements of § 158(d)(2)(A)(i)-(iii), places limitations on what a bankruptcy court may consider in *granting* certification, it in no way limits a bankruptcy court's discretion to *deny* certification if it concludes *for any reason* that a direct appeal would not be beneficial.  In other words, even if this Court finds that the Defendants satisfied one of the three statutory prongs, this Court may still deny the motion to certify.

a.      *Defendants do not raise any purely legal questions.*

Defendants' questions relating to the relevancy of Defendants' tax information are all mixed questions of law and fact. *See e.g., E.E.O.C. v. S. Farm Bureau Cas. Ins. Co.*, 271 F.3d 209, 211 (5th Cir. 2001) ("The relevance of documents . . . is a mixed question of law and fact."). Such mixed questions are heavily dependent on the facts of a particular case and are not appropriate for direct review by a circuit court. *See id.* at 158 ("Congress intended [Section 158(d)] to facilitate our guidance on *pure questions of law*." (emphasis added)). Accordingly, there is not a substantial likelihood that the Fifth Circuit would consider Defendants' questions relating to the relevancy of Defendants' tax information because they do not present purely legal questions which need clarification.

Furthermore, the issue purportedly relating to subject-matter jurisdiction is nothing but the very same issue of relevancy, but cloaked in jurisdictional attire. As noted above, the Defendants do not cite one case which holds that a bankruptcy court is limited in the evidence it may consider during a core proceeding. This is because it is obvious that a bankruptcy court may consider all relevant evidence in such proceedings. *Cf. N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 527 (1984) (noting that bankruptcy court's are courts of equity, which "must have great latitude to consider any type of evidence relevant to [the] issue" before them); *Carey Lumber Co. v. Bell*, 615 F.2d 370, 377 (5th Cir. 1980) (in considering dischargeability of debt, it "is required [] that the bankruptcy court consider all relevant evidence"). Thus, what Defendants are really arguing is that a creditor's tax activities are never relevant to the creditor's good faith. What evidence is relevant, however, always depends on the facts of a given case, and Defendants

cannot turn a question of relevance into a purely legal question simply by couching it in overly broad terms or packaging it as a question of subject-matter jurisdiction.

> b.      *There is no confusion among the bankruptcy courts.*

In terms of whether this Court may consider evidence regarding the Defendants' tax activities in determining whether to allow, disallow, or subrogate their claims in the bankruptcy, there is no confusion. Indeed, as this Court held in its June 7, 2011 Order, it "has core jurisdiction to determine whether claims filed in the bankruptcy case should be allowed or disallowed." *See* June 7, 2011 Order (citing 28 U.S.C. §§ 158(b)(2)(B) and 1334(b)).

And none of the cases cited by Defendants support the proposition that a bankruptcy court is limited in the types of evidence it may consider during such core proceedings. *See In re Prescription Home Health Care, Inc.*, 316 F.3d 542, 547 (5th Cir. 2002) (not challenging a bankruptcy court's jurisdiction to consider types of evidence, but rather, holding that a bankruptcy court cannot adjudicate third party's tax liability); *In re Statmaster Corp.*, 465 F.2d 978 (5th Cir. 1972) (same). In fact, several bankruptcy courts have specifically found it appropriate to consider a creditor's tax activities when assessing whether or not to allow the creditor's claim in the bankruptcy—just like this Court. *See e.g., In re IFS Financial Corp.*, 417 B.R. 419, 445 (Bankr. S.D. Tex. 2009) (considering whether a creditor's intent to violate tax laws demonstrated bad faith in becoming a creditor of the debtor corporation); *In re Tiger Petroleum Co.*, 319 B.R. 225, 229 n. 7 (Bankr. N.D. Okla. 2004) (suggesting that tax benefits of creditor would be relevant to creditor's good faith if trustee presented admissible evidence of the benefits' illegality); *In re Ionosphere Clubs, Inc.*, 262 B.R. 604 (Bankr. S.D.N.Y. 2001) (court considering Chapter 11 debtor adversary proceedings against parties to tax-benefit-transfer

agreements); *In re Plaza Mortg. and Finance Corp.*, 187 B.R. 37, 43 (Bankr. N.D. Ga. 1995)
(Chapter 11 trustee suing debtor's former accountants for malpractice and fraud for, among other
things, preparing false tax returns).

Because the bankruptcy courts are obviously not confused as to their authority to
consider a creditor's tax activities in assessing whether or not to allow the creditor's claims, this
question does not need clarification from the Fifth Circuit and that court is unlikely to review it.

        c.     *Even if the Fifth Circuit were to permit a direct appeal, the Defendants
would still not succeed on the merits.*

Again, there is no serious debate regarding whether a bankruptcy court has the authority
to consider a creditor's tax activities in determining whether to allow the creditor's claim.
Indeed, a bankruptcy court must consider all relevant evidence in core proceedings over which it
presides. *Cf. N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 527 (1984) (noting that bankruptcy
court's are courts of equity, which "must have great latitude to consider any type of evidence
relevant to [the] issue" before them); *Carey Lumber Co. v. Bell*, 615 F.2d 370, 377 (5th Cir.
1980) (in considering dischargeability of debt, it "is required [] that the bankruptcy court
consider all relevant evidence"). Moreover, as discussed above, several bankruptcy courts have
found it entirely appropriate to consider a creditor's tax activities under similar circumstances to
those presented in this case. And Defendants have produced no authority which even suggests
the contrary. Accordingly, even if the Fifth Circuit were to exercise its discretion to permit the
Defendants' appeal, there is no likelihood that it would resolve the merits in the Defendants'
favor.

2.    Criterion 2:  The Defendants cannot show that there is a substantial threat that the
Defendants will suffer irreparable injury if the stay is not granted.

Defendants claim that they will suffer irreparable injury absent a stay, because they will

be forced to disclose their tax returns to the Trustee and therefore any subsequent challenge to

this Court's authority to order disclosure of that information will be moot.  This claim is

baseless.  The disclosure of allegedly privileged information during litigation does not moot any

subsequent challenge to the discoverability of that information.  *See Mohawk Indus. Inc. v.*

*Carpenter*, 130 S. Ct. 599, 606-07 (2009) ("Appellate courts can remedy the improper disclosure

of privileged material in the same way they remedy a host of other erroneous evidentiary rulings:

by vacating an adverse judgment and remanding for a new trial in which the protected material

and its fruits are excluded from evidence.").  Furthermore, there is already a protective order in

place.  Accordingly, Defendants have failed to show that they will suffer irreparable injury

absent a stay, and their motion should be denied on this basis alone.

3.    Criterion 3:  The Defendants cannot show that the threatened injury to them in the
absence of a stay outweighs the potential harm to the Trustee if the stay is
granted.

As discussed above, Defendants have not demonstrated any real injury they will suffer in

the absence of a stay.  Yet, on the flip side, any stay of these proceedings will cause harm to both

the Trustee and AHF's legitimate creditors.  As described above, this matter is the second in a

much longer line of soft-money adversaries that the Trustee has filed.  If this case is delayed,

numerous others will need to be delayed as well.  Such delay in the proceedings will necessarily

delay the payout to AHF's creditors and will frustrate the Trustee's objective of obtaining a swift

resolution of the bankruptcy case for the benefit of all creditors.

4.    <u>Criterion 4:  The Defendants cannot show a stay will serve the public interest.</u>

Contrary to Defendants' claims, there is little to no possibility that this Court's Orders will be reversed on appeal, or that this adversary proceeding will be dismissed.  Thus, there is no colorable risk that persisting in this adversary proceeding may ultimately prove to have been a waste of time or money.  There is, however, a risk that delay will only push back further the date on which AHF's legitimate creditors are able to recover on their claims.  Again, the Trustee and this Court have an interest in ensuring that AHF's creditor's do not suffer such needless delay.

**C.    Conclusion and Scheduling Proposal.**

For the foregoing reasons, the Trustee respectfully requests that this Court deny Defendants' Motion for Separate Trials, deny Defendants' Motion for Stay Pending Appeal, and order that the Defendants must produced the previously-ordered discovery by a date certain and soon enough so as not to risk a continuance of the September trial date.  To that end, and attached as Exhibit A is proposed scheduling order.

Dated: June 22, 2011

Respectfully submitted,

Max R. Tarbox (TX 19639950)
max@tarboxlaw.com
TARBOX LAW, P.C.
2301 Broadway,
Lubbock, Texas 79401
Phone: (806) 686-4448
Fax:    (806) 368-9785

and

*/s/ Marcus A. Helt*
Stephen A. McCartin (TX 13374700)
smccartin@gardere.com
Barry M. Golden (TX 24002149)
bgolden@gardere.com
Marcus A. Helt ((TX 24052187)
mhelt@gardere.com
Jacylyn Austein (Gardner) (TX 24069760)
jaustein@gardere.com
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas 75201-4761
Telephone: 214.999.3000
Facsimile: 214.999.4667

**COUNSEL FOR WALTER
O'CHESKEY, TRUSTEE OF THE AHF
LIQUIDATING TRUST**

## CERTIFICATE OF SERVICE

This is to certify that, according to this Court's ECF System, a true and correct copy of the foregoing was served electronically on those parties registered to receive such service on June 22, 2011.

*/s/ Barry M. Golden*
Barry M. Golden

Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| American Housing Foundation, | § | Case No.:  09-20232-RLJ |
| | § | |
| Debtor. | § | |
| | § | |
| Walter O'Cheskey, as Chapter 11 Trustee, | § | Adversary No. 10-02016-RLJ |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| Robert Templeton, | § | |
| | § | |
| Defendant. | § | (Consolidated with) |
| | § | |
| Walter O'Cheskey, as Chapter 11 Trustee, | § | Adversary No. 10-02017-RLJ |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| David Miller, | § | |
| | § | |
| Defendant. | § | |

## SECOND AMENDED SCHEDULING ORDER

With respect to trial of the above-referenced consolidated adversary proceedings, on June 8, 2011, this Court issued an Order continuing trial from its prior setting and resetting trial to September 14 -15, 2011; October 17 – 18, 2011; and October 24 – 26, 2011 (and for each of these dates the trial will be conducted at Room 100, 624 S. Polk St., Amarillo, Texas, beginning at 9:00 a.m.). [Docket No. 81.]  In the Order, this Court also instructed the parties to submit a second amend scheduling order that conforms to the new trial setting ("Proposed Agreed Scheduling Order").  [Docket No. 81.]  On June 22, 2011, the Trustee submitted the Proposed Agreed Scheduling Order, and based on that, the Court hereby **ORDERS** the following:

1.    June 28, 2011.       ENFORCEMENT OF DISCOVERY ORDER. Defendants shall
                           produce to the Trustee all documents ordered produced under this
                           Court's Order dated June 7, 2011 at Docket Number 8.
                           Defendants shall provide to the Trustee dates in July 2011 for the
                           depositions of Robert Templeton, David Miller, any or all of
                           Defendants' experts, and any non-party witnesses controlled by
                           Defendants or represented by Defendants' counsel.

2.    August 7, 2011.      DISCOVERY SHALL CONCLUDE. All fact and expert witness
                           depositions shall be taken on or before this date and all written
                           discovery requests must be served by this date. Any deposition
                           noticed for date after August 7, 2011 and all written discovery
                           requests served after August 7, 2011 shall not be permitted except
                           by agreement of the parties or permission by the Court upon
                           showing of good cause. An example of good cause might be
                           where a party is able to demonstrate issues arising out of newly-
                           discovered information (*e.g.,* information discovered through
                           documents produced after August 7, 2011).

3.    August 14, 2011.     DAUBERT MOTIONS. Motions to strike or exclude expert
                           testimony to be filed and served.

4.    September 7, 2011.   WITNESS LISTS. The parties shall exchange lists of witnesses
                           and exhibits for trial.

5.    September 7, 2011    PRETRIAL ORDER FILING: Pretrial Order to be filed and
                           served.

                           FINDINGS: Proposed Findings of Fact and Conclusions of Law
                           are to be filed and served.

                           TRIAL BRIEFS. Trial Briefs are to be filed and served.

6.    September 9, 2011    DOCKET CALL: Parties shall participate in a telephone
                           conference with the Court to announce ready for trial beginning on
                           September 14, 2011.

7.    September 12, 2011   DAUBERT RESPONSES: Responses to any motions to strike or
                           exclude expert testimony are to be filed and served.

8.    September 14, 2011.  TRIAL. First day of trial.

      The Court further ORDERS:

      A.    Prior to the commencement of trial, the Trustee and the Defendants shall provide

            the Court with notebooks containing a joint set of trial exhibits and an index

identifying, for each exhibit, (1) the exhibit number, (2) a brief description of the exhibit, and (3) whether the exhibit is jointly stipulated for admission into evidence, and if not, the legal objections to the admissibility of the exhibit. Copy costs for the notebooks shall be split evenly between the Trustee and the Defendants.

B.     Prior to the commencement of trial, the Trustee and the Defendants shall provide the Court with notebooks containing all depositions whose transcripts contain testimony that either the Trustee or any of the Defendant might offer at trial (the "Joint Deposition Notebook"). Copy costs for the notebooks shall be split evenly between the Trustee and the Defendants.

C.     At trial, and regardless of the availability of a witness to testify live, the Trustee and the Defendants may read any question from any transcript from the Deposition Notebook into the record (the "Reading Party"). The party not reading the question into the record (the "Non-Reading Party") may have the opportunity to assert evidentiary objections prior to the Reading Party reading the answer into the record. If the Non-Reading Party does not assert evidentiary objections or if the Court overrules the evidentiary objections, the Reading Party may read the answer into the record. The Reading Party may put an "actor" in the witness box to read answers. In order to read questions and answers into the record, the Reading Party need not designate the questions and answer to the Court and to the Defendant before trial (and in fact, this process should supplant the need for such pre-trial designations). The Non-Reading Party may object to questions even if it did not assert objections at the deposition. To the extent there

are objections in the transcript between the question and answer, the Reading

Party shall not read the objections into the record (and in fact, the process of live

objections at trial should supplant the pre-trial objections process).  The Reading

Party may read any part of a transcript from the Deposition Notebook to any live

witness for the purpose of impeachment of that witness ("Impeachment Use").

For Impeachment Use, the Reading Party may read answers prior to the Non-

Reading Party's objections.

D.    Parties are strongly encouraged to attend personally for opening statements.

### END OF ORDER ###

Prepared and submitted by:

*/s/ Barry M. Golden*
Stephen A. McCartin (TX 13374700)
smccartin@gardere.com
Barry M. Golden (TX 24002149)
bgolden@gardere.com
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas 75201-4761
Telephone:  214.999.3000
Facsimile:  214.999.4667

**COUNSEL FOR WALTER O'CHESKEY,
TRUSTEE OF THE AHF LIQUIDATING TRUST**